UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLENN M. BROWN,**<br>Petitioner**,**<br>vs.<br>**NANCY A. BERRYHILL,**<br>Respondent**.** | CASE NO. 18-cv-03160-YGR<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 19, 20 |

Petitioner/Claimant Glenn M. Brown filed this action against defendant Nancy Berryhill as Acting Commission of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's finding that he was not disabled under section 1614(a) of the Social Security Act ("the Act"). Brown contends the administrative law judge (ALJ) improperly rejected his testimony regarding his disability, and that the ALJ's Step-Four finding is not supported by substantial evidence.

Having carefully considered the papers submitted and the record in this case, and for reasons set forth below, Brown's motion is **GRANTED**, the Commissioner's motion is **DENIED**, and this action is remanded for further consideration.

**I. BACKGROUND**

**A. Procedural History**

On August 18, 2014, plaintiff Glenn M. Brown filed an application for Title II, Social Security Disability Insurance benefits, claiming disability since June 26, 2014. (Dkt. No. 14,

Administrative Record ("AR") 166–68.)[1] On November 14, 2016, the ALJ held a hearing wherein plaintiff and a vocational examiner testified. (AR 28–57.) On March 16, 2017, the ALJ issued his determination that plaintiff was not disabled under the Social Security Act. (AR 23.) The Appeals Council denied plaintiff's request to review the ALJ's decision on March 21, 2018. (AR 1–6.) The ALJ's decision then became the final decision of the Social Security Administration Commissioner. On May 25, 2018, plaintiff initiated the instant action seeking judicial review of the ALJ's decision.

### B. Summary of Evidence in the Underlying Proceedings

Brown was 62 years old at the time of the hearing before the ALJ. (AR 31.) Brown alleges disability beginning June 26, 2014, based on a combination of impairments including diabetes and peripheral neuropathy of both feet. (AR 167, 178-85.)

On April 16, 2014, Brown was treated in the emergency room for dizziness and light-headedness. He had very high blood sugar and had recently lost 15 pounds. He had been urinating frequently at night and had been extremely thirsty. (AR 272.) Brown was diagnosed with diabetes. (AR 273.)

On July 13, 2014, Brown was treated in the emergency room, this time for foot and leg pain. He had recently been diagnosed with diabetes and clinicians opined he had peripheral neuropathy in his legs and feet. He was prescribed over-the-counter pain medication as well as Gabapentin. At the time, Brown had recently lost his job and medical insurance and could not see his regular physician at Kaiser. (AR 259-60.)

On August 14, 2014, Brown was again treated for leg and foot pain in the emergency room. Brown reported that Oxycodone had been effective for his pain, but he had run out at that time. Clinicians prescribed Naprosyn for his pain and urged him to start the Gabapentin he had been prescribed. (AR 263.)

//

//

---

[1] The claim was initially denied November 17, 2014, and reconsideration was denied March 5, 2015. (AR 16, 75, 82.) Claimant filed a request for hearing March 10, 2015. (AR 88.)

*1.   Brown's Testimony*

Brown has a high school education (AR 49) and has performed work in the past five years as a truck driver and a stock clerk. (AR 50.) At the time of the November 14, 2016 hearing, Brown testified that his only work was performing in-home care for his roommate for about nine hours each week. (AR 31.) Previously, he worked as a donation processor/sorter at Goodwill for four and one half years, and as a truck driver for thirteen years before that. (AR 32-33.) The job at Goodwill required that he stand and sort items all day. (AR 34.) Brown stopped working at Goodwill on June 26, 2014, due to the pain, pressure, and tingling in his feet. (AR 34.) He had missed days due to the pain and was told he was going to be terminated when he resigned. (*Id.*)

Brown testified that, at the time of the hearing, he could lift about 75 pounds but could stand for only 15 minutes and walk for 20 to 25 minutes before needing to rest. (AR 38.) Brown clarified that while he could lift up to 50 pounds once or twice, he could not do it repeatedly throughout the day. (AR 54-55.) He could sweep a little, cook, and do some laundry at home. (AR 38.) He testified that he tried to do a little weight-bearing exercise, but his neuropathy affected his ability to do more than about five squats at a time. (AR 39.)

Brown testified that his symptoms had worsened over the year since his disability application. (AR 41.) He testified that he was no longer able to drive a 16-wheeler truck he could not feel the brake pedal and worried that he could not stop a truck in time, endangering others on the road. (AR 42-43.) He stated that he could not stand for a full work day because of the pain and numbness in his legs. (AR 44.) He also testified that he had worked as a cook in the past and could have done that job for no more than 4-6 hours per day because it requires a lot of standing. (AR 44.) However, the ALJ said that any work more than 15 years before (*i.e.*, prior to 2001) would not be considered. (AR 45-46.)

Though Brown testified to more recent treatment, at the time of the hearing he had submitted only his medical records from several months in 2014 and no records from any visits thereafter. (AR 34-35, 256-301.) For instance, Brown testified that he had been seen by a physician in October 2016 but the administrative record has no documentation of that visit. (AR

34-35.)² Brown testified that he took medication for his blood pressure and diabetes, as well as over-the-counter pain medication and Gabapentin for neuropathy pain, though it made him sleepy. (AR 40.) He testified that a doctor performed diagnostic tests on his feet about one month prior to the hearing and informed him that he had severe nerve damage because he did not feel anything in his feet. (AR 41.)

### 2. *Vocational Expert's Testimony*

The only other witness in the administrative hearing was Jeff Beeman, a vocational expert. (AR 50.) Beeman identified that Brown's past relevant work would be categorized medium, semi-skilled work as a retail processor/stock clerk and a truck driver. (AR 50.) The ALJ asked Beeman to consider a hypothetical "individual able to lift 50 pounds, sit, stand, and walk six hours each in an eight-hour day," and therefore of medium residual functional capacity. (AR 50.) Beeman opined that such an individual could perform both of Brown's past jobs. (AR 51.) Brown's attorney asked Beeman to consider a hypothetical individual limited to sitting eight hours a day and standing no more than two hours a day, Beeman testified that such an individual could not perform either of Brown's past jobs. (AR 51.) The ALJ then asked if someone able to lift 50 pounds, sit eight hours, and stand and walk two hours could perform the truck driver job but not the stock job. (AR 52-53.) Brown's attorney added to the hypothetical scenario limitations preventing the person from using foot controls to operate the brakes, gas, and clutch of a truck, and Beeman agreed that the person could not work as a truck driver or any of Brown's past work. (AR 53-54.) Likewise, Beeman agreed that someone who could only lift 50 pounds infrequently could not perform the truck driver job. (AR 55.)

## II. LEGAL FRAMEWORK

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v.*

---

² At the hearing, the ALJ ordered an internal medicine evaluation to update the medical information and kept the administrative record open to allow Brown to submit additional medical records after the hearing. (AR 35-37.) However, the administrative record does not contain any additional medical records or evidence of a clinical examination occurring after the November 14, 2016 hearing, nor does the ALJ appear to have considered any in reaching his decision. (*See* AR 24-27, List of Exhibits, attached to ALJ Decision.)

4

*Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679. The Court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007)). The Court must rely "only on the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010; *accord Treviso v. Berryhill,* 871 F.3d 664 (9th Cir. 2017).

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from one or more "anatomical, physiological, or psychological" conditions "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). The Act limits eligibility for benefits to those whose impairments "are of such severity that [they are] not only unable to do [their] previous work, but cannot, considering [their] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Act uses a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantially gainful activity if engaged

5

in work involving significant physical or mental activities.  20 C.F.R. § 404.1572(a).  Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit.  20 C.F.R. § 404.1572(b).  If the claimant is presently engaged in substantially gainful activity, he is not disabled.  If the claimant is not engaged in substantially gainful activity, the ALJ proceeds to Step Two.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities.  If the claimant does not have a severe impairment or combination of impairments, he is not disabled.  If the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to Step Three.

At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 416.920(e).  If the claimant's impairment or combination of impairments meets the listed criteria and the duration requirement, the claimant is disabled.  20 C.F.R. § 404.1509.  If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

At Step Four, the ALJ must determine whether the claimant has the ability to perform past relevant work.  20 C.F.R. § 404.1520(f).  Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments.  The ALJ considers both severe and non-severe impairments in determining the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant has the RFC to perform past relevant work, he is not disabled.  If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience

to determine whether the claimant can perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f). "Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 416.972(a). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work and fulfills the duration requirement, he is disabled.

In any action brought by or against the United States, the Equal Access to Justice Act requires that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### III.  ALJ'S DECISION

In an eight-page decision dated March 16, 2017, the ALJ applied the five-step sequential analysis to determine that claimant was not eligible for disability insurance benefits. (AR 13-27.) Briefly, the ALJ determined as follows:

#### A.  Step One

The ALJ found at Step One of the sequential analysis that Brown had not engaged in substantial gainful activity since the alleged onset date of June 26, 2014. Although Brown had been performing in-home health care for his roommate for nine hours a week, the ALJ found this work did not rise to the level of substantial gainful activity.

#### B.  Step Two

At step two, the ALJ found Brown had two severe impairments: diabetes mellitus and peripheral neuropathy. The ALJ noted that "claimant stated that his ability to work was limited because he cannot stand for a long time because his feet and legs begin to hurt." (AR 18.) He additionally noted that Brown "has pain in his left arm that occurs on a daily basis (Exhibit 4E)." (AR 18.)

#### C.  Step Three

At step three, the ALJ found that Brown's "impairments did not meet or equal any listed impairment (within the context of the listings set forth at 9.00, 1.02, and 11.14)." (AR 18.)

### D. RFC Determination

The ALJ found that Brown had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except [*sic*] lift 50 pounds and can sit, stand, and walk for six hours each in an eight[-]hour day." (AR 19.) The ALJ noted that this evaluation required him to consider "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." (AR 19.) The ALJ noted that, whenever statements about those factors were not substantiated by objective medical evidence, he was required to consider other evidence in the record to determine if Brown's symptoms limit the ability to do work-related activities. (*Id.*) The ALJ recited the claimant's testimony regarding his prior work and educational level, his physical symptoms and functional limitations, his medical conditions and his medications. (*Id.*) The ALJ found, based upon that evidence, that Brown's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ went on to state as follows:

> The record reflects the claimant's history of diabetes mellitus and peripheral neuropathy. He alleges an inability to work because of these conditions (Exhibit 1F-3F). However, the weight of the objective evidence does not support the claimant's claims of disabling limitations to the [*sic*] degree. The medical evidence indicates the claimant received routine conservative treatment for complaints of bilateral lower extremity pain and swelling and diabetes. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein. There is no medical source statement from an examining or treating physician that endorses the extent of the claimant's alleged functional limitations.
>
> The claimant's record does show that he has diabetes mellitus and peripheral neuropathy. The claimant has addressed his pain with medication. There is little in the record indicating that these problems have advanced to the point that the claimant's mobility is severely reduced, or that a more drastic therapeutic intervention is required. On the contrary, the claimant's record simply shows emergency room visits where the claimant's concerns and symptomology are addressed. When coupled together, these problems could certainly serve to reduce his overall exertional capacity. However, there is little suggestion in the record that the claimant's neuropathy has critically advanced, or that he has lost all feeling in his extremities, or that a dran1atic intervention, such as amputation is required. To the contrary, this record indicates that the claimant's neuropathy is fairly mild.

8

(AR 20.)

The ALJ summarized the medical records, stating that the medical records demonstrated that Brown was "essentially normal except for subjective complaints of pain and swelling (Exhibit 1F-2F) . . . [and] fail[ed] to document that the claimant has been hospitalized for his impairment or indicate that the claimant had received significant active care other than for conservative routine maintenance," with medications largely controlling his symptoms. (AR 21.) The ALJ opined that that the "record fail[ed] to document any objective clinical findings" to support plaintiff's alleged disabling impairments. (AR 20.) Specifically, there was "no medical source statement from an examining or treating physician" that endorsed plaintiff's alleged functional limitations. (*Id.*) Rather the record indicated that plaintiff "received routine conservative treatment" and that his "neuropathy is fairly mild." (AR 20.) Plaintiff's treatment was confined largely to three emergency room ("ER") visits, where "[o]n exam, he appeared pain free," he had a normal gait, his "sensation [was] intact," he exhibited a normal range of motion and motor strength, and was observed "walking very briskly to triage in sandal[s]." (AR 20–21.) At his final recorded visit to the ER on August 14, 2014, the ALJ noted that despite "complaining of bilateral feet and leg shooting pain," the plaintiff "ambulated with steady gait," his "leg[s] appear well," and once he was seen by a physician, "he stated that he quit work and needed disability paperwork filled out." (AR 21, 263, 265.) The ALJ also found significant that plaintiff's "medications have been relatively effective in controlling [his] symptoms." (AR 21.)

The ALJ further noted that he was required to consider factors in addition to the objective medical evidence in determining whether to credit the claimant's own testimony as to severity, including: claimant's activities of daily living; the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms; other treatment for pain and symptom relief; and any other factors regarding functional limitations or restrictions due to pain or other symptoms. The ALJ found that Brown's range of activities of daily living, including light housekeeping and cooking and performing in-home health services, was "not consistent with total disability." (AR at 21.)

### E. Step Four

At step four of the sequential analysis, the ALJ found Brown was "capable of performing past relevant work as a cook [*sic*] and driver [because . . . [t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 22.) Summarizing the vocational expert's testimony, the ALJ found that Beeman responded to three different hypotheticals, two of which indicated that claimant could perform his past work as a stock clerk and a truck driver, both "medium" exertional level jobs.[3] The ALJ noted that Beeman's opinion of a third hypothetical—the hypothetical that accounted for inability to use foot controls—would have precluded Brown from performing either of his past jobs (AR 22.) However, the ALJ ultimately determined that Brown "retains the ability to perform both of his past jobs, using the residual functional capacity in hypothetical question number one." Thus, the ALJ concluded that Brown had not been under a disability for purposes of the Act from June 26, 2014, to the date of the March 16, 2017 decision. (AR 23.)

## IV. DISCUSSION

In his motion for summary judgment, Brown argues the ALJ erred in two ways: (1) improperly discrediting Brown's testimony without clear and convincing reasons to reject it; and (2) relying on Beeman's opinion only for "hypothetical number one," which omitted critical functional limitations, resulting in a no-disability determination not supported by the record. The Court considers each in turn.

### A. Discrediting Brown's Testimony

Brown first contends that the ALJ did not offer clear and convincing reasons to discount his testimony as to the intensity, persistence, and limiting effects of his symptoms. In *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit reiterated a two-step analysis by which an ALJ must determine if a claimant's subjective pain and symptom testimony is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

---

[3] The first two hypotheticals were: (1) an individual who can lift 50 pounds and can sit, stand, and walk for six hours each in an eight-hour day; and (2) an individual who can lift 50 pounds, can sit for eight hours in an eight-hour day, and can stand and walk for two hours in an eight-hour day.

10

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. A claimant is not required to provide objective evidence of pain or of the severity of their symptoms, only that the impairment "reasonably [could] have caused some degree of the symptom." *Id*. at 1014 (citing *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). Once this first step is satisfied, the ALJ can reject the claimant's testimony about the severity of his symptoms and pain only if there is affirmative evidence of malingering or other findings as to credibility based upon clear and convincing reasons. *Id*. at 1014-15 (citing *Smolen,* 80 F.3d at 1281 and *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006)). Stated otherwise, "[i]f the ALJ finds that the claimant's testimony as to the severity of h[is] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002). A credibility determination should consider such factors as "reputation for truthfulness, inconsistencies either in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 959 (*citing Light v. Social Security Administration,,* 119 F.3d 789, 792 (9th Cir. 1997)).

In *Garrison*, the Ninth Circuit found that the ALJ improperly rejected the claimant's pain testimony by finding it inconsistent with her ability to carry out certain activities of daily living, and by deeming her symptoms "improved" with "conservative" treatment. *Garrison*, 759 F.3d at 1015-16. Rather, the record demonstrated that the claimant experienced only partial and short-lived pain relief from her treatment regime, and that her daily living activities—limited and interspersed with many periods of rest—were not inconsistent with an inability to perform gainful work activity. *Id*. As the Ninth Circuit reiterated in *Garrison*, "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with

11

testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* at 1016.

By contrast, in *Thomas* the Ninth Circuit held that the ALJ provided "specific, clear and convincing reasons for discounting" the claimant's pain and symptom severity testimony. *Thomas*, 278 F.3d at 959. In addition to the lack of objective medical evidence to support her descriptions of her pain and limitations, the record also provided evidence undermining her credibility, including: changing stories and lack of candor about alcohol and drug use to various providers and examiners; failure to give maximum or consistent effort in her capacity examinations; and other history of malingering or avoidance of work. *Id.*

Here, the ALJ's decision summarized Brown's testimony and found it to be "not entirely consistent with the medical evidence and other evidence in the record" with respect to intensity, persistence, and the limiting effects of his symptoms. (AR 20.) The ALJ determined that his testimony was "not fully consistent" for two reasons. One, the ALJ found the testimony inconsistent with evidence that he could perform daily living activities ("prepare simple meals, do household chores including laundry, sweep and vacuum, go outside, shop in stores, handle finances, read, watch television, exercise, g[o] on the internet") as well as perform in-home health care services nine hours a week. (AR 21.) The ALJ stated that "[t]his broad range of activities of daily living is not consistent with total disability" and "undermines . . . the claimant's allegations of disabling functional limitations." (*Id.*) Second, the ALJ found Brown's testimony inconsistent with evidence that his prescribed medications were "relatively effective in controlling" his symptoms. (AR 21.) With respect to the treatment Brown received, he stated "the record fails to document that the claimant has been hospitalized for his impairment or indicate that the claimant had received significant active care other than for conservative routine maintenance." (AR 21.)

While the Commissioner contends the ALJ's decision to discount Brown's credibility was supported by clear and convincing reasons, the reasons given closely resemble those in *Garrison* and are similarly insufficient. First, the ALJ offered no reason to suggest that Brown was malingering or that he had been untruthful in other testimony. Second, as in *Garrison*, 759 F.3d at

12

1015-16, Brown's ability to carry out the daily living activities identified by the ALJ is not inconsistent with his testimony that he could stand for only 15 minutes and walk for 20 to 25 minutes before needing to rest. Brown's ability to engage in those simple activities, many of which did not require being on his feet at all, does not undermine his statements about his inability to stand and walk for longer periods, or to have sufficient sensation in his feet to operate a truck safely. Even performing in-home care services, such as cooking, for a roommate nine hours a week is not inconsistent with an inability to perform full-time work requiring standing and walking several hours a day.

Third, as the ALJ here acknowledged, Brown testified his medications caused him sleepiness and that his symptoms had worsened in the last year, particularly the numbness and loss of feeling in his feet. (AR 19, 40-41.) Brown also testified that he took medication for neuropathy pain, but that the medication "really doesn't help it." (AR 40.) Indeed, none of the emergency room records summarized by the ALJ indicate the medications prescribed for Brown were effective in controlling pain, numbness, tingling, and inability to be on his feet for long periods of time. Thus, the objective medical evidence did not contradict Brown's testimony about the severity of his symptoms and the limitations they caused.

The ALJ's determination that plaintiff's testimony was not credible because plaintiff had "not been hospitalized for his impairments" (AR 21), did not require a dramatic intervention, such as amputation" (AR 20), and had not "lost all feeling in his extremities" (AR 20) indicates that the ALJ employed a much different standard for assessing credibility than is supported by the caselaw. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Kuharski v. Colvin*, No. 2:12-CV-01055-AC, 2014 WL 3385183, at *4 (E.D. Cal. July 10, 2014) (ALJ's reliance on the lack of hospitalization was unreasonable and did not constitute a clear and convincing reason for rejecting plaintiff's credibility regarding his mental limitations); *Bagdoyan v. Colvin*, No. CV 12-5312 RNB, 2013 WL 941965, at *4 (C.D. Cal. Mar. 11, 2013) (lack of history of hospitalization did not constitute a clear and convincing reason to discount plaintiff's

excessive pain testimony).[4]

"[A]lthough [courts] will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations and quotation omitted). Where the ALJ's written decision simply states the claimant was not credible and summarizes the medical evidence in support of the determination without "identify[ing] the testimony [h]e found not credible . . . [and] link[ing] that testimony to the particular parts of the record supporting h[is] non-credibility determination," the ALJ fails to meet the standard required by the Ninth Circuit. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Here, the ALJ failed to explain his reasoning for discrediting Brown's testimony in a way that would permit meaningful review by this Court. Therefore, the Court finds that reversal of the decision and remand to the agency for further determination and explanation is warranted.[5]

### B. Failure to Consider Vocational Expert Opinion About Additional Hypotheticals

Brown further seeks to set aside the Commissioner's denial of benefits on the grounds that

---

[4] In addition, Brown testified that he had been tested by a doctor and could not feel anything in his feet approximately a month before the hearing. The ALJ held the record open to permit Brown to either submit additional medical records, but at the same time ordered an internal medicine evaluation. (AR 35-37.) He stated that he was ordering the evaluation "in case the information that you get from Tom Waddell clinic is not very complete. That way, we'll have something to, you know, make a decision on." The ALJ's decision is completely silent as to whether additional medical records were provided or considered, and whether Brown underwent the evaluation the ALJ ordered. The lack of medical records cannot be the sole basis for discounting Brown's testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ offered no clear and convincing reason to have discounted the testimony that Brown was unable to feel anything in his feet, which plainly would be incompatible with a finding that he is capable of performing both of his past jobs.

[5] Brown also argues that the ALJ failed to consider whether loss of his job and lack of medical insurance played a role in Brown obtaining limited treatment for his symptoms. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("a claimant who meets the disability criteria may not be denied benefits if he is unable to afford the treatment that would help him"). The Court agrees that the failure to acknowledge this testimony of the claimant further undermines the ALJ's credibility determination.

14

the ALJ's decision was not supported by substantial evidence, since the ALJ relied on an incomplete hypothetical in reaching the Step Four determination. Specifically, Brown argues that the ALJ improperly omitted from the vocational hypothetical his inability to use foot controls to drive a truck, as well as his inability to stand or walk for more than 2 hours in an 8-hour work day or lift 50 pounds repeatedly. Instead, he relied on "hypothetical number one," which omitted critical functional limitations, resulting in a no-disability determination not supported by substantial evidence in the record.

Where an expert opinion is based upon a hypothetical that omits significant limitations in contradiction to the record, the Commissioner cannot rely on such opinion in its determination. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir. 1993).

Because the Court finds that the ALJ improperly disregarded Brown's testimony regarding the extent and severity of his symptoms, as stated above, reliance on hypothetical number one was not supported by the record and had no evidentiary value.

### C. Remand for Further Proceedings

Brown requests that this matter be remanded for immediate payment of benefits, only in the alternative seeks further administrative proceedings. The Court does not find it appropriate to remand for immediate payment of benefits. *See Benecke v. Barnhart,* 379 F.3d 587, 595–96 (9th Cir. 2004) (remand for immediate payment of benefits is reserved for "rare circumstances" where there are no outstanding issues to be resolved and it is clear from the record that the claimant is entitled to benefits).

//

//

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Claimant's motion and **DENIES** the Commissioner's motion for summary judgment. The matter is **REMANDED** for further proceedings consistent with this opinion. 42 U.S.C. § 405(g).

The Clerk of the Court shall close the file.

This Order terminates Docket Numbers 19 and 20.

**IT IS SO ORDERED.**

Dated: June 11, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**